**22 MAG 5995**

Approved: _____
DAVID RAYMOND LEWIS
Assistant United States Attorney

Before:  HONORABLE ONA T. WANG
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **SEALED COMPLAINT** |
| - v. - | : | |
| | | Violation of 18 U.S.C. |
| MATTHEW WITKOWSKI, | : | §§ 371 and 1347 |
| Defendant. | : | COUNTY OF OFFENSE: NEW YORK |
| | : | |

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

BENJAMIN DAVIS, being duly sworn, deposes and says that he is a Special Agent with the U.S. Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"), and charges as follows:

### COUNT ONE
### (Conspiracy to Commit Health Care Fraud and to Violate the Anti-Kickback Statute)

1.  From at least in or about August 2019 through at least in or about April 2021, in the Southern District of New York and elsewhere, MATTHEW WITKOWSKI, the defendant, and others known and unknown, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to commit one and more offenses against the United States, to wit, to commit health care fraud, in violation of Title 18, United States Code, Section 1347, and to violate the Anti-Kickback Statute, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B).

2.  It was a part and an object of the conspiracy that MATTHEW WITKOWSKI, the defendant, and others known and unknown, knowingly and willfully, would and did execute and attempt to

execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, as that term is defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, to wit, WITKOWSKI engaged in a scheme to buy and sell illegally obtained written orders for durable medical equipment ("written orders"), and to use those written orders to cause the Medicare Program ("Medicare") to pay for fraudulent claims filed by and on behalf of suppliers of durable medical equipment ("DME"), in violation of Title 18, United States Code, Section 1347.

3.  It was further a part and an object of the conspiracy that MATTHEW WITKOWSKI, the defendant, together with others known and unknown, knowingly and willfully, would and did solicit and receive remuneration (including kickbacks, bribes, and rebates), directly and indirectly, overtly and covertly, in cash and in kind, from one and more persons in return for purchasing, ordering, and arranging for and recommending purchasing and ordering goods, facilities, services, and items for which payment may be made in whole and in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B).

## Overt Acts

4.  In furtherance of the conspiracy and to effect the illegal objects thereof, MATTHEW WITKOWSKI, the defendant, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York:

a. On or about September 3, 2019, a bank account of True Prospects Marketing, Inc. ("True Prospects"), which company and account were controlled by WITKOWSKI and CC-1, received from a company controlled by an individual ("Supplier-1") in the Southern District of New York, an online banking transfer of approximately $15,750.00 from a bank account located in the Southern District of New York.

b. On or about April 2, 2020, WITKOWSKI transmitted a text message to a group chat that included Supplier-1, who was located at the time in the Southern District of New York, regarding the purchase and sale of written orders for DME.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Health Care Fraud)

5. From at least in or about August 2019 through at least in or about May 2021, in the Southern District of New York and elsewhere, MATTHEW WITKOWSKI, the defendant, knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud a health care benefit program, as that term is defined in Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, to wit, WITKOWSKI illegally bought and sold fraudulently obtained written orders for DME, which written orders were to be used, and were used, to cause Medicare to pay for fraudulent claims filed by and on behalf of DME suppliers.

(Title 18, United States Code, Sections 1347 and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

6. I am a Special Agent with the HHS-OIG and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

### Overview of the Scheme

7. From at least in or about August 2019 through at least in or about May 2021, MATTHEW WITKOWSKI, the defendant, and others known and unknown, including a co-conspirator not named herein ("CC-1"),[1] participated in a scheme and conspiracy to defraud

---

[1] CC-1 has pled guilty in this District to an Information charging him with conspiring to commit health care fraud, in connection

3

Medicare and to violate the Anti-Kickback Statute. In furtherance of that conspiracy and scheme, WITKOWSKI illegally purchased fraudulent written orders for DME, and then illegally sold those written orders to DME suppliers, so that those DME suppliers could use those written orders as the basis for millions of dollars of fraudulent claims to Medicare. Many of these fraudulent written orders used names and personal identifying information of Medicare beneficiaries, as well as professional identifying information of doctors and other health-care providers enrolled in the Medicare program, without the authorization or prior knowledge of either those beneficiaries or providers, without regard to medical necessity, and without a medical examination. Over the course of the scheme, these prescriptions were used by WITKOWSKI'S co-conspirators, as identified below, to fraudulently bill Medicare for millions of dollars.

<u>The Medicare Program</u>

8. At all times relevant to this Complaint:

   a. Medicare has been a federal health care program providing benefits to persons who are over the age of 65 or who are disabled. Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

   b. Individuals who receive Medicare benefits are referred to as "Medicare beneficiaries."

   c. Medicare is a "Federal health care program," as defined in Title 42, United States Code, Section 1320a-7b(f), and a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

   d. Medicare is divided into four parts which help cover different types of services. One of those four parts is Medicare Part B ("Part B"), which provides medical insurance.

   e. Among other things, Part B specifically covers medically necessary physician office services and outpatient care, including the ordering of DME, including prosthetics, orthotics, and supplies, such as off-the-shelf ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively "braces").

---

with his participation in the conspiracy involving WITKOWSKI charged in this Complaint.

4

    f. DME supply companies, physicians, and other healthcare providers that provide DME and other products and services to Medicare beneficiaries are referred to as Medicare "providers."

    g. Generally, Part B covers the costs of DME only if, among other requirements, such items and services are reasonable, documented, and medically necessary, as defined by applicable Medicare regulations, and if those items and services are actually provided to patients, as represented to Medicare. Specific types of DME are also subject to additional requirements. Medicare will not reimburse claims for services that are the result of referrals obtained through kickbacks and/or bribes. Such claims are deemed false and fraudulent because they violate Medicare laws, regulations, and program instructions, as well as violating federal criminal law. For example, where a DME order is procured through the payment of a kickback in violation of the Anti-Kickback Statute, as set forth at Title 42 United States Code, Section 1320a-7b, a claim to Medicare for reimbursement for that order is fraudulent and will not be reimbursed by Medicare. By implementing these restrictions, Medicare aims to preserve its resources, which are largely funded by United States taxpayers, for those elderly and other qualifying beneficiaries who have a genuine need for medical services.

### Relevant Persons and Entities

  9. At all times relevant to this Complaint, MATTHEW WITKOWSKI, the defendant, together with CC-1, owned and controlled True Prospects. WITKOWSKI and CC-1 were the sole signatories on True Prospects' bank account. WITKOWSKI and CC-1 were also identified as the principals of True Prospects on incorporation documents filed with the State of Florida.

  10. From at least in or about September 2019 through at least in or about November 2020, an individual ("Supplier-1")[2] controlled three DME supply companies, all located in the Southern District of New York, which were engaged in the business, among other things, of billing Medicare for purportedly providing DME to Medicare beneficiaries.

---

[2] Supplier-1 has pled guilty in this District to an Information charging him with various federal charges, including his participation in the conspiracy involving WATTHEW WITKOWSKI, the defendant, charged in this Complaint.

11.    At all times relevant to this Complaint, two individuals (respectively, "Seller-1" and "Seller-2," and together, the "Sellers") were business partners who, like MATTHEW WITKOWSKI, the defendant, were engaged in the business of unlawfully buying and selling written orders for DME.[3]

### The Fraud Scheme

12.    In the course of the investigation in this case, I have reviewed various electronic text messages and email communications, including such communications to and from MATTHEW WITKOWSKI, the defendant.[4] I have also interviewed Supplier-1, who has provided information that has been extensively corroborated by text messages and emails, including such communications with WITKOWSKI, as well as by bank records and Medicare billing records. Based on these interviews with Supplier-1, as corroborated by numerous text messages between Supplier-1, WITKOWSKI, and CC-1, among others, as well as by bank and Medicare billing records and consensually recorded telephone calls between WITKOWKSI and Supplier-1, I have learned that from in or about September 2019 through in or about November 2019, and again from in or about August 2020 through in or about November 2020, Supplier-1 paid more than $186,000 to True Prospects, and thus to the benefit of WITKOWSKI and CC-1, in exchange for written orders for DME. These illegally sold written orders were in turn used by Supplier-1 as the basis to submit fraudulent claims to Medicare.

   a.    Based upon an analysis of bank records and Medicare billing records in this case, as well as interviews with Supplier-1, I have learned that payments to True Prospects (and to the Sellers) result in fraudulent charges to Medicare that are several times larger than the amounts of money that DME suppliers pay to purchase those written orders. Thus, there is probable cause to believe that this payment of $186,000 from Supplier-1 to True

---

[3] The Sellers have each been indicted in this District, on charges of conspiracy and health care fraud.

[4] The text messages and emails referenced herein include communications obtained from the following sources: (1) the cellular telephones of Supplier-1 and Seller-1, which HHS-OIG searched with the consent of Supplier-1 and Seller-1, respectively; (2) two cellular telephones belonging to Seller-2, which were seized and searched based on a judicially-authorized search warrant; (3) the email accounts of Supplier-1, which HHS-OIG accessed and searched with Supplier-1's consent; and (4) the email accounts of Sellers-1 and -2, which were seized and searched pursuant to a judicially-authorized search warrant.

Prospects resulted in fraudulent charges to Medicare of several times the amount that Supplier-1 paid to True Prospects.

       b. From interviews of Supplier-1, corroborated by emails and text messages, I have learned that WITKOWSKI and CC-1 explained to Supplier-1 that they were partners, and that True Prospects was their company. Shortly thereafter, WITKOWSKI electronically transmitted to Supplier-1 a contract between True Prospects and one of Supplier-1's DME supply companies. WITKOWSKI signed that contract, as did Supplier-1 (who, unbeknownst to WITKOWSKI and CC-1, used a false name here and in his other dealings with WITKOWSKI and CC-1). While the contract purported to be a "Marketing Services Agreement," which provided that True Prospects would provide marketing services to Supplier-1's company for approximately $5,000 per week, Supplier-1 has explained that he understood it was actually a contract to provide written orders for DME (which the parties referred to as "leads" or "marketing"), for $500 per written order. WITKOWSKI and CC-1 later increased the cost of each written order to $525.

       c. The explanation from Supplier-1, that the references to "marketing" were in fact coded references to the sale of written orders for DME, is corroborated by text messages between Supplier-1 and WITKOWSKI, as well as by messages exchanged in group chats that included WITKOWSKI, CC-1, Supplier-1, and the Sellers. Based on my review of these messages, I have learned that the payments for "marketing services" are in fact payments for written orders for DME. Among other things, these text-message exchanges explicitly discuss the number of written orders to be delivered in particular weeks, the price per order, and the particular written orders that presented problems and were expected to jeopardize Medicare claims based on those orders.

    13. Based upon a review of text messages, emails, and bank records, as well as interviews of Supplier-1, I have also learned that, in or about April 2020, MATTHEW WITKOWSKI, the defendant, and CC-1, through True Prospects, began illegally purchasing written orders for DME from the Sellers. WITKOWSKI and CC-1 were initially introduced to the Sellers by Supplier-1, who had himself previously illegally purchased DME written orders from the Sellers. Following this introduction, WITKOWSKI and CC-1 entered into an agreement with the Sellers in which, in or about April and May 2020, they paid the Sellers for the written orders, with Supplier-1 also receiving a kickback fee from the Sellers. The arrangement between WITKOWSKI/CC-1 and the Sellers was explicitly discussed in text messages that I have reviewed, including group chats that included WITKOWSKI, CC-1, Supplier-1, and the Sellers.

7

14.     In addition to the written orders that MATTHEW WITKOWSKI, the defendant, and CC-1 sold to Supplier-1 through True Prospects, I have learned from text messages from WITKOWSKI to the Sellers, and to Supplier-1, that WITKOWSKI and CC-1 also sold written orders for DME to other DME suppliers. Specifically, I know from bank records that, from in or about August 2019 through in or about March 2021, True Prospects received at least $3.5 million from DME supply companies, including the DME supply companies controlled by Supplier-1 and other DME supply companies engaged in illegally buying written orders for DME.

15.     In the course of my investigation, other agents of HHS-OIG and I have interviewed a number of representatives of physicians and other health-care providers whose electronic signatures appear on some of the written orders for DME that MATTHEW WITKOWSKI, the defendant, and CC-1 sold to Supplier-1. These health-care providers reported in these interviews, in substance and in part, that they did not authorize those written orders, and that their electronic signatures on those documents are unauthorized.

16.     Based upon interviews of Supplier-1 and consensually recorded telephone calls between Supplier-1 and MATTHEW WITKOWSKI, the defendant, I have learned that WITKOWSKI repeatedly stated, in substance and in part, that he operated a call center in the Dominican Republic, where WITKOWSKI lived at all times relevant to this Complaint, and through at least in or about June 2022. The existence and operation of this True Prospects call center was also confirmed in or about May and June 2022 by visual surveillance by local law enforcement in Santo Domingo, Dominican Republic. According to Supplier-1, WITKOWSKI stated in telephone calls, in substance and in part, that he used this call center to generate "leads," a term that WITKOWSKI used regularly to refer to the protected health information ("PHI") of individual Medicare beneficiaries.

17.     From text messages between MATTHEW WITKOWSKI, the defendant, and Seller-2, as well as from interviews with Supplier-1, and consensually recorded telephone conversations between Supplier-1 and Seller-2, I have learned that, from at least in or about December 2019 through at least in or about April 2021, "Provider-1" was an individual who ran a business that purported to provide telemedicine services.

    a.     In fact, however, as I have learned from these same sources and from bank records, the business of Provider-1 was to receive from persons engaged in the illegal selling of written orders for DME -- including WITKOWSKI, CC-1, and the Sellers, among

others -- the personal health information of individual Medicare beneficiaries, accompanied by requests for specific DME orders for each beneficiary. From these same sources, and from an examination of written orders that were sold by Provider-1 to WITKOWSKI, CC-1, and the Sellers, which HHS-OIG obtained through billing records, I have learned that, Provider-1 used the information provided by WITKOWSKI, CC-1, and the Sellers to generate written orders for DME, bearing what purported to be authorizing electronic signatures of physicians and other medical providers.

     b. As noted above, other agents of HHS-OIG and I have interviewed a number of representatives of physicians and other health-care providers whose electronic signatures appear on some of the written orders for DME that WITKOWSKI and CC-1 sold to Supplier-1. In addition, other agents and I have also interviewed representatives of physicians and other health-care providers whose electronic signatures appear on some of the written orders for DME that were illegally bought from Provider-1 by the Sellers. Again, these health-care providers reported in these interviews that they did not authorize those written orders, and that their electronic signatures on those documents are unauthorized.

     c. Based on my review of bank records, I know that, from in or about December 2019 through in or about April 2021, MATTHEW WITKOWSKI and CC-1, through the bank account of True Prospects, paid more than $700,000 to a company controlled by Provider-1.

WHEREFORE, I respectfully request that an arrest warrant be issued for MATTHEW WITKOWSKI, the defendant, and that he be imprisoned or bailed, as the case may be.

           S/ Benjamin Davis / otw
           BENJAMIN DAVIS
           Special Agent
           Office of the Inspector General
           U.S. Department of Health and
             Human Services

Sworn to before me this
21st day of July, 2022   By telephone

_____
ONA T. WANG
United States Magistrate Judge